AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

Middle District of Florida

United States of America
v.

ISRAEL MIRANDA

Defendant(s)

)
)
)
)
)
)
)

Case No.

6:24-mj- 1437

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____October 5, 2023_____ in the county of _____Osceola_____ in the
___Middle___ District of _____Florida_____ , the defendant(s) violated:

| Code Section | Offense Description |
| --- | --- |
| 21 U.S.C. § 846 | conspire to possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

_____
Complainant's signature

Alejandra Houston, Special Agent
Printed name and title

Sworn to before me this ___24th___ day of
April, 2024.

_____
Judge's signature

City and state:          Orlando, Florida

EMBRY J. KIDD, U.S. Magistrate Judge
Printed name and title

UNITED STATES DISTRICT COURT
MIDDLE DISTRCT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.

ISRAEL MIRANDA Jr.

Case No. 6:24-mj- 1437

## AFFIDAVIT IN SUPPORT OF COMPLAINT AND ARREST WARRANT

I, Alejandra Houston, being duly sworn, state the following:

### Agent Background

1.      I am a Special Agent with the Drug Enforcement Administration (DEA) and have been since October of 2020.  As a Special Agent, I attended a 14-week basic agent training academy in Quantico, Virginia. During the academy, I attended classes and courses conducted by the DEA regarding the importation, transportation, and distribution of illegal drugs.  I am an investigative or law enforcement officer of the United States, within the meaning of 18 U.S.C. § 2510(7) and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

2.      I am knowledgeable about state and federal drug laws. I have participated in a number of drug trafficking, money laundering, and organized crime investigations. Furthermore, I have received instruction on being able to identify and investigate DTOs, execute arrest warrants on members of those organizations, seize and process evidence, and ultimately prosecute members of the DTO. As a Special

Agent, I have worked on multiple investigations targeting drug traffickers as well as money launderers. Based on my training and experience, I am familiar with the manner and means in which narcotics traffickers and organized crime groups conduct their business, including methods of importing and distributing narcotics, money laundering, the use of residential telephones, business telephones, cellular telephones, and other communication devices to facilitate their illegal acts.

3.      I have conducted investigations concerning the identification of co-conspirators through the use of telephone records, financial records, and other pertinent documents. I have also conducted surveillance in connection with numerous narcotics investigations, through which I have learned valuable information regarding the techniques used by DTOs to distribute drugs in both domestic and international markets. As a result of my training and experience, I am familiar with the way in which DTOs illegally traffic, transport, and distribute drugs, and launder the proceeds derived from their drug distribution activity.

4.      Based on my training and experience, I can attest that individuals involved in the illicit possession, distribution, manufacture, transportation, and trafficking of controlled substances, as well as the laundering of drug proceeds, often use telephones to discuss and facilitate their illegal activities. In order to conceal their identities and avoid detection from law enforcement, narcotics traffickers often enlist the aid of friends, relatives, and acquaintances to distribute or store controlled substances or launder drug proceeds. Narcotics traffickers often use the names of these individuals or fictitious names to subscribe to telephone services, purchase

2

property, and rent or register vehicles.  Based on my training and experience, I know that drug trafficking at the retail level is largely a cash business.  I know that drug traffickers often generate large amounts of unexplained wealth, and through financial transactions, attempt to conceal, disguise or legitimize unlawful proceeds through domestic and international banks and their attendant services, securities brokers, professionals, such as attorneys and accountants, casinos, real estate, shell corporations and business fronts, and otherwise legitimate businesses which generate large quantities of currency.  In addition, drug traffickers often use drug proceeds to purchase additional narcotics to perpetuate and promote the ongoing conspiracy.  I know that drug traffickers often use cellular telephones to communicate with co-conspirators in furtherance of their money laundering activities.

5.     Through my employment as a law enforcement officer, I have gained knowledge in the use of various investigative techniques, including the use of wire and electronic interceptions and other types of electronic surveillance, physical surveillance, undercover investigators, confidential informants, cooperating witnesses, controlled purchases of illegal drugs, consensually-monitored recordings, investigative interviews, trash searches, mail covers, financial investigations, administrative subpoenas, and search and arrest warrants.

## Purpose of Affidavit

6.     The information set forth herein is based on the following: (a) my own personal observations; (b) information that I received from other law enforcement officers involved in this investigation, including by reviewing official reports prepared

3

by other law enforcement officers; (c) interviews of witnesses and the review of reports summarizing the interviews of witnesses; and (d) information provided to me by law enforcement officials who met with and interviewed said witnesses.

7.     Because this affidavit is being submitted for the limited purpose of establishing probable cause for the issuance of a criminal complaint, I have not set forth each and every fact that I learned as a result of this investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause that a violation of federal law has been committed. Unless otherwise noted, all statements of other persons described in this affidavit are set forth in substance and in part, rather than verbatim.

8.     As set forth below, there is probable cause to believe that on or about April 24, 2024, in the Middle District of Florida, Israel MIRANDA did knowingly conspire to possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine, in violation of 21 U.S.C. § 846. and 21 U.S.C § 841.

### Probable Cause

9.     On October 5, 2023, investigators established surveillance on ISRAEL MIRANDA Jr. ("MIRANDA") at his residence. At approximately 1:05 p.m., investigators observed MIRANDA depart his residence in a white Chevrolet Silverado (SUBJECT VEHCILE-1). At approximately 1:15 p.m., investigators observed SUBJECT VEHICLE 1 park in the lot of a store located on Landstar Blvd, Orlando, FL. At this time, investigators observed a black Dodge Durango park on

the passenger side of SUBJECT VEHICLE 1. A few minutes later, investigators observed SUBJECT VEHICLE 1 and the Dodge Durango depart the parking lot. At this time, investigators followed SUBJECT VEHICLE 1 and the Durango as they both traveled to an apartment complex in Orlando, FL. When the two vehicles arrived, the DEA observed MIRANDA exit the Silverado and walk towards what investigators believe to be a stash apartment operated by MIRANDA. A few minutes later, the DEA observed MIRANDA exit the apartment and give the driver of the Durango (Conspirator 1) an orange Nike shoe box. A few moments later, MIRANDA returned to the stash apartment and collected a large box, subsequently putting the box in the back seat of SUBJECT VEHICLE 1 and departing the apartment complex.

        10.    Investigators terminated surveillance on MIRANDA and established surveillance on Conspirator 1 in his Durango. Investigators followed the Durango to a store located on Osceola Pkwy, Kissimmee, FL. At approximately 1:31 p.m., the DEA observed Conspirator 1 on the phone. At approximately 1:47 p.m., investigators observed the Durango depart the parking lot and drive across the street to another store located on Osceola Pkwy, Kissimmee, FL. At this time, the DEA observed the Durango park next to a white GMC SUV. At approximately 1:50 p.m., investigators observed Conspirator 1 give the driver of the GMC (Conspirator 2) the orange Nike shoe box. At this time, investigators terminated surveillance on Conspirator 1 and established surveillance on the white GMC.

11.    At approximately 1:15 p.m., agents contacted units from Florida Highway Patrol to assist with a traffic stop of the white GMC if probable cause was observed by troopers to do so. At approximately 1:55 p.m., Troopers with FHP observed a violation (speeding) as the vehicle was traveling on Osceola Parkway, and subsequently stopped the vehicle. During the traffic stop, a drug detection K9 conducted a free air sniff of the GMC. Subsequently, the K9 handler advised that the K9 alerted to the vehicle. FHP Troopers conducted a probable cause search of the vehicle and located an orange Nike shoe box in the back seat of the vehicle. Inside the box, FHP located a compressed brick of powder that was suspected to be a kilogram of cocaine wrapped in plastics. FHP also located a clear plastic bag containing suspected cocaine above the rearview mirror in the sunglasses holder. Troopers conducted a field test of both the brick of power and the powder in the clear plastic bag and both tested positive for cocaine.  Based on training and experience, I know that cocaine tends to be imported and distributed at the wholesale level in compressed brick form, each "brick" being approximately one kilogram of this substance.

12.    On October 13, 2024, investigators established surveillance on MIRANDA at his residence. At approximately 3:45 p.m., investigators observed MIRANDA arrive at the Pinnacle Pointe apartment complex and enter the stash apartment.  At approximately 3:53 p.m., investigators observed a Nissan Altima park in the parking space in front of the stash apartment. A few moments later, investigators observed MIRANDA exit the stash apartment with a brown grocery

bag and meet with the driver of the Nissan Altima. At approximately 4:42 p.m.,
investigators contacted units from Orange County Sheriff's Office (OCSO) to assist
with a traffic stop if probable cause was observed by deputies to do so. At
approximately 4:52 p.m., OCSO observed a violation as the vehicle was traveling on
Boggy Creek Road, and subsequently stopped the vehicle. Deputies contacted the
driver and sole occupant of the vehicle (Conspirator 3). During the traffic stop,
deputies requested the assistance of the OCSO K-9 unit. The OCSO conducted a free
air sniff of the Altima. Subsequently, the K9 deputy advised that the K9 alerted to
the vehicle. Deputies conducted a probable cause search of the vehicle which yielded
positive results. OCSO located approximately $262,257 in a brown paper bag.
During the traffic stop, Conspirator 3 told deputies that he started collecting money
in Wesley Chapel early in the morning. Furthermore, Conspirator 3 told deputies
that once he collected approximately $260,000 he was supposed to meet with a third
party at a specific location on Lake Nona Blvd, Orlando, FL. Conspirator 3 told
deputies that he was to give the third party the bulk U.S. currency, and in return he
was going to get $500.

13.    Based on my training and experience and knowledge of the case, I
know that Conspirator 3's behavior is consistent with drug money laundering.  I
know that individuals are commonly paid smaller amounts of money to transport
bulk currency from and to drug distributors and to profess ignorance about the actual
source, ownership, and control of the bulk currency if they are ever confronted by
law enforcement.

7

14.     On November 6, 2023, Orlando DEA investigators received information that caused them to believe that that MIRANDA would be traveling to South Florida to deliver drug proceeds and engage in a money laundering transaction involving drug proceeds.

15.     On November 7, 2023, based on GPS tracker data, Orlando DEA investigators learned that MIRANDA was traveling to South Florida in SUBJECT VEHICLE 1. It should be noted that GPS tracker data showed that MIRANDA left from his residence to travel towards south Florida. GPS tracker data revealed that MIRANDA did not make any stops after departing from his residence. On the same date, DEA Miami and Orlando investigators established surveillance on Florida's Turnpike southbound. Investigators located SUBJECT VEHICLE 1 traveling southbound on the turnpike and coordinated with the Florida Highway Patrol (FHP) to initiate a traffic stop if probable cause was observed to do so. FHP conducted a traffic stop on SUBJECT VEHICLE 1 and identified MIRANDA as the driver of the vehicle. A probable cause search of SUBJECT VEHICLE 1 was conducted. FHP troopers located approximately $51,989 in U.S. currency in the passenger floorboard of the truck. Additionally, FHP troopers located a firearm inside the vehicle. The currency was seized and MIRANDA was not detained.

16.     On March 6, 2024, tracker data on a white Mercedes driven by MIRANDA (SUBJECT VEHICLE 2) revealed that MIRANDA had traveled to the residence of known drug trafficker Conspirator 4 from his residence. Subsequently, investigators established surveillance at Conspirator 4's residence. At approximately

8

9:27 p.m., investigators observed MIRANDA depart Conspirator 4's residence in SUBJECT VEHICLE 2. At this time, investigators contacted the Orange County Sheriff's Office (OCSO) and requested their assistance in conducting a walled-off traffic stop.

17.     At approximately 10:03 p.m., SUBJECT VEHICLE 2 was stopped by OCSO for a traffic violation. At that time, deputies contacted the driver, and sole occupant of the vehicle, MIRANDA. A probable cause search of the vehicle resulted in the seizure of $149,785 in currency from the trunk of the white Mercedes. Deputies questioned MIRANDA regarding the currency. MIRANDA was temporarily detained during the traffic stop but was not arrested or in custody and he was not provided his *Miranda* rights.  MIRANDA told deputies that the currency was approximately $20,000 and that he (MIRANDA) earned the money from his job as a barber. OCSO seized the currency from MIRANDA and then released him from the traffic stop. SUBJECT VEHICLE 2 was stopped in the Pinnacle Point Apartment Complex, where the stash apartment is located. Based on my training and experience and knowledge of the case, I believe that MIRANDA was bringing drug proceeds to the stash apartment.

18.     After the March 6, 2024 traffic stop and seizure, investigators reviewed pole camera footage of Conspirator 4's residence. This pole camera footage revealed that, upon MIRANDA's arrival at Conspirator 4's residence, MIRANDA and Conspirator 4 met at the trunk of SUBJECT VEHICLE 2. The footage further revealed that a black bag was retrieved from the trunk of SUBJECT VEHICLE 2 and

placed near the front door of Conspirator 4's residence. Additionally, investigators observed a light-colored bag placed in the trunk of SUBJECT VEHICLE 2. The currency found in the white Mercedes was found in a grocery bag – consistent with the pole camera footage -- and the currency consisted of various denominations, bundled by rubber bands, and separated into multiple counted stacks. Furthermore, based on GPS tracker data, I know that MIRANDA travelled to Conspirator 4's residence directly from his residence.

19.    Based on my training and experience, and knowledge of this case, I believe that Conspirator 4 gave MIRANDA the currency in exchange for multiple kilograms of cocaine. Additionally, it is common for drug traffickers to bundle money in "stacks." These stacks are often held together with rubber bands. This method makes counting, sending, and receiving money quick and efficient for conducting hand to hand money transactions.

20.    On March 7, 2024, a Florida certified narcotic-contraband detector K-9 positively alerted to the presence of the odor of narcotic-contraband on the currency.

21.     Based on the foregoing facts and evidence, I believe that probable cause

exists to charge Israel MIRANDA Jr. with one count of conspiracy to possess with

intent to distribute 500 grams or more of a mixture or substance containing a

detectable amount of cocaine, in violation of 21 U.S.C. § 846 and 21 U.S.C §

841(a)(1)(B).


Alejandra Houston
Special Agent


Affidavit signed before me,
this _____ day of _____, 2024.


EMBRY J. KIDD
United States Magistrate Judge


11